**SBAITI & COMPANY PLLC**
Mazin A. Sbaiti, Esq.
California Bar No. 275089
2200 Ross Avenue
Suite 4900W
Dallas, Texas 75201
T: (214) 432-2899
F: (214) 853-4367
E: MAS@SbaitiLaw.com
*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **DR. LAURIE KLEIN, DR. CRAIG MAURER,  DR. STEVE LIRINGIS AND LISA LIRINGIS, DR. TODD ANTOVICH AND CAROL ANTOVICH, DR. RANDY MANTZ AND CARLENE MANTZ,  DR. PAMELA HART, DR. GREG MOLIS, DR. LES COHEN, and DR. KEN CARLE,** | **Civil Action No. _____** |
| *Plaintiffs,* | **ORIGINAL CLASS ACTION COMPLAINT** |
| **vs.** | |
| **PARKER UNIVERSITY,** | **DEMAND FOR JURY TRIAL** |
| *Defendant.* | |

### I.

### INTRODUCTION

Plaintiffs bring suit seeking damages arising out of Defendant Parker University's negligent, deceptive, unfair, and unlawful conduct.  Specifically, from 2012 through at least 2016, Parker University sponsored continuing education seminars that it knew would feature Steve Down.  These actions and related acts and omissions directly and foreseeably led to each Plaintiff becoming a victim of a scheme or artifice to defraud Plaintiffs out of millions.

At first blush, Parker University and Steve Down's concerted action would appear to be a facially legitimate enterprise. Parker University used its name and reputation to convince doctors

**ORIGINAL CLASS ACTION COMPLAINT - Page 1**

to come to Steve Down's seminars, which they did not have to pay for.  But in doing so, Parker University provided Steve Down a captive audience primed to be receptive to his message and a venue at which to market his fraudulent investment schemes and solicit investments. In other words, Parker University's imprimatur gave Steve Down instant credibility and legitimacy.

Parker University's Continuing Education Department generated substantial revenue and sponsoring these seminars was a substantial portion of that revenue.

Yet, Parker University partnered with Steve Down—who, at that point, had already been prosecuted by the Securities Exchange Commission for investment fraud—in a way that not only violated State continuing education rules but cloaked Steve Down with the legitimacy that Plaintiffs relied upon when they decided to give Steve Down their millions.

Parker University's involvement and connection with Steve Down masked the scent that Steve Down was a con man. The skepticism prospective investors would normally have when approached by a stranger was assuaged because they relied on the belief that Parker University would never do business with, or expose them to, someone so devious.

Plaintiffs naturally believed Parker University would not have sponsored a person as unscrupulous as Steve Down as a speaker and allowed him to present at its continuing education seminars without performing due diligence.

Plaintiffs now seek to recover damages for out-of-pocket losses, mental anguish, emotional distress, treble damages, any and all other available damages, costs, and attorneys' fees. Plaintiffs bring these actions on behalf of themselves and those around the country who are similarly situated, who have suffered injuries and seek compensation for the same injuries arising out of Defendant's conduct that is common to all of them.

Accordingly, Plaintiffs will seek class treatment of some or all of their claims based upon the allegations herein.

**ORIGINAL CLASS ACTION COMPLAINT - Page 2**

**II.**

**PARTIES**

1.      Plaintiff Dr. Laurie Klein ("Klein") is a chiropractor who attended a continuing educations course sponsored by Parker University in Monterey, California.  She is a resident of Oakland, California.

2.      Plaintiff Dr. Craig Maurer ("Maurer") is a chiropractor who attended continuing education courses sponsored by Parker University in Sacramento, California and in Elk Grove, California.  He is a resident of Napa, California.

3.      Plaintiff Dr. Steve Liringis ("Liringis") is a chiropractor who attended a continuing education course sponsored by Parker University in Charlotte, North Carolina.  Plaintiff Lisa Liringis is his wife.  They are residents of Greensboro, North Carolina.

4.      Plaintiff Dr. Todd Antovich ("Antovich") is a chiropractor who attended a continuing education course sponsored by Parker University in Elk Grove, California.  Plaintiff Carol Antovich is his wife.  They are residents of Wilton, California.

5.      Plaintiff Dr. Randy Mantz ("Mantz") is a chiropractor who attended a continuing education course sponsored by Parker University in Elk Grove, California.  Plaintiff Carlene Mantz is his wife.  They are residents of Reno, Nevada.

6.      Plaintiff Dr. Pamela Hart ("Hart") is a chiropractor who attended a continuing education course sponsored by Parker University in Denver, Colorado.  She is a resident of Boulder, Colorado.

7.      Plaintiff Dr. Greg Molis ("Molis") is a chiropractor who attended a continuing education course sponsored by Parker University in Salt Lake City, Utah.   He is a resident of West Jordan, Utah.

**ORIGINAL CLASS ACTION COMPLAINT - Page 3**

1
2
3

8.      Plaintiff Dr. Les Cohen ("Cohen") is a chiropractor who attended continuing education courses sponsored by Parker University in Las Vegas, Nevada, El Segundo, California, and Costa Mesa, California.  He is a resident of Victorville, California.

4
5
6
7

9.      Plaintiff Dr. Ken Carle ("Carle") is a chiropractor who attended a continuing education course sponsored by Parker University in Tampa, Florida.  He is a resident of Sarasota, Florida.

8
9
10

10.      Defendant Parker University ("Parker") is a Texas non-profit corporation with its principal office in Dallas, Texas, and may be served through its registered agent, William E. Morgan, 2540 Walnut Hill Lane, Dallas, Texas 75229.

11
12
13
14
15

11.      Non-party Steve Down ("Down") is a Utah "businessman" who dubs himself "America's Wealth Coach." He has started numerous businesses, including Free Continuing Education Association ("FCEA"), Financially Fit, LLC, The Falls Event Centers, Even Stevens Sandwiches, and Steve Hotel (collectively, "Down's Companies").

16

**III.**

17

**JURISDICTION AND VENUE**

18
19
20

12.      Pursuant to 28 U.S.C. § 1332(a), this Court has subject matter jurisdiction over this action because there is complete diversity of parties and the amount in controversy exclusive of interest and costs exceeds $75,000.

21
22
23

13.      This Court also has subject matter jurisdiction over the Complaint under 28 U.S.C. § 1332(d)(2) because at least one class member is diverse from the Plaintiff and the total amount in controversy for the class exceeds $5,000,000.

24
25
26
27

14.      This Court has specific personal jurisdiction over Defendant based upon it having established the requisite minimum contacts with California by continuously doing business in this state,  by sponsoring continuing education seminars that are the subject of this lawsuit in California, by contracting with California residents for transactions that occurred in this State,

28

**ORIGINAL CLASS ACTION COMPLAINT - Page 4**

deriving revenue from California residents, and directing intentional conduct whose tortious consequences, the force and effect of which were felt in California, and other circumstances.

15.     Venue is proper under the federal venue statute, 28 U.S.C. § 1391 *et seq*., based upon the facts and circumstances alleged herein which show that all or a substantial number of the events from which the claims arise occurred in this jurisdiction and district.

Intra-district Assignment: Plaintiffs request assignment to the San Francisco Division because a substantial number of the actions and omissions giving rise to this action occurred in counties assignable to the San Francisco division, and the plaintiffs who reside in this division reside in the counties assignable to the San Francisco division pursuant to L-R3 .2(d).

## IV.

## FACTUAL BACKGROUND

### A.  THE SCHEME: PARKER SPONSORS DOWN'S SEMINARS

16.     Parker University is the preeminent chiropractic university in the country and maybe the world.  It opened in 1978 as Parker College and became Parker University in 2011.

17.     From around 2012 through 2106, Parker University sponsored continuing education seminars for chiropractors featuring  Down and his companies Free Continuing Education Association ("FCEA") and/or Financially Fit, LLC, during which Down solicited Plaintiffs to put money into Down's Companies

18.     In all, Plaintiffs estimate Parker sponsored as many as 50 continuing education seminars where Down spoke and made presentations.

19.     Parker's name and reputation attracted doctors to the seminars, caused them to choose these seminars in lieu of countless other available seminars, and provided both the seminar—and Down—legitimacy and credibility.

20.     Down and/or Down's Companies paid Parker to sponsor the events.

**ORIGINAL CLASS ACTION COMPLAINT - Page 5**

21.     Specifically, Parker was paid a location fee and received a multiple, often 150%, of its costs.

22.     Seminar attendees, including Plaintiffs, each paid Parker University $35 for Parker to process their continuing education voucher so they could earn their required credit hours.  The actual processing cost Parker incurred was *de minimus*, and the $35 was essentially pure profit to Parker University.

23.     Parker knew that Down was also paying the instructors, who cost thousands of dollars,  to provide a continuing education seminar presentation.

24.     Parker knew that Down was paying the advertising costs for the seminars—in fact, Parker's sponsorship essentially required Down to create and publish the advertising for the seminars, thus making Down an agent of Parker.

25.     Parker required Down and Down's Companies to advertise, market, and promote the seminars.  Attached as Exhibit A is a copy of the contract between Parker and FCEA for the December 7-8, 2013 seminar attended by Dr. Liringis.

26.     The contract required that all seminar advertising, marketing, public communications, and promotional materials "must be approved by Parker."  *Id.*

27.      Parker also knew that Down was paying the room cost and other expenses to put on the seminars.

28.     Parker also knew that, despite Down's paying thousands out of pocket to put on the seminars, Down did not charge for attendance.

29.     Continuing education seminars frequently cost attendees hundreds of dollars, so being able to attend a seminar for free, or almost free, attracted high numbers of attendees nationwide, including Plaintiffs.

30.     Parker further knew that Down was soliciting money from attendees.  It also knew that Down and Down's Companies did not sell the usual items sold in a chiropractor's office, such

**ORIGINAL CLASS ACTION COMPLAINT - Page 6**

as supplements, and it knew that Down and Down's Companies did not sell machinery or tools used by chiropractors in their businesses.

31.     When Parker began partnering with Down, he had already been prosecuted by the Securities Exchange Commission for investment fraud and running a pyramid scheme.

32.     But this did not deter Parker.

33.     Parker filed the applications for the continuing education courses but failed to notify state boards that Down would be soliciting attendees.

34.     For example, Parker submitted the application for the continuing education seminar Dr. Liringis attended to the North Carolina State Board of Chiropractic Examiners for its review and approval. Parker did not provide the North Carolina State Board any indication/reference to Mr. Down and his presentation.  If they had, the course would not have been approved because the inclusion of Down's presentation violated North Carolina Statute 21 NCAC §10.027 – Continuing Education Seminars. Indeed, upon information and belief, the North Carolina State Board of Chiropractic Examiners sanctioned Parker for the violation.

35.     Parker's name being attached to the seminars gave them credibility that further enticed the doctors to attend and to choose  its seminars over others that they could have attended.

36.     Parker received substantial revenue incentivizing it to overlook Down's malfeasance.

37.     Parker's name appeared on the advertising for the seminars, the marketing materials, course materials, and continuing education vouchers.

38.     The advertising brochures and flyers made it appear that Parker was sponsoring the seminar featuring  the continuing education speaker and Down, which upon information and belief, were created by Down and his businesses and published far and wide.

39.     Parker also failed to ensure that the seminar advertising materials distinguished between the endorsed chiropractic instructors and Down and instead often referred to them equally

ORIGINAL CLASS ACTION COMPLAINT - Page 7

or called them both "presenters."  These misrepresentations misled chiropractors into believing Down was a Parker-endorsed presenter who was part of the seminar, and that his presentation and investment opportunity was trustworthy and endorsed by Parker University.

40.    The advertising materials drew no distinction that Down's presentation was supposed to be a wholly separate event put on by his company and unrelated to Parker or the continuing education seminar—which is what Parker alleges as it tries to wash its hands of any responsibility.

41.    Parker thus vouched for Down's legitimacy and credibility in the eyes of attendees, which caused the unsuspecting doctors to trust Down and suspend the skepticism they might normally have had.

42.    Parker violated state chiropractic board continuing education rules by allowing Down to give presentations in its  classroom.

43.    Parker's actions were also inconsistent with generally accepted industry practices and were unreasonable given the circumstances.

44.    Parker did not send representatives to the seminars who could have ensured Down did not violate state board rules.  Instead, Parker made Down its agent to ensure compliance—something that was contrary to his own financial interest and something it  knew he was not going to do.

45.    Upon information and belief, Parker failed to perform any due diligence on Down and Down's Companies prior to sponsoring seminars with him across the country.

46.    Parker did not require Down to provide his lunchtime presentation slides or talking points to it so it  could know what he was going to say.

47.    Parker did not verify that the information Down provided to Parker's continuing education attendees was accurate or truthful.

**ORIGINAL CLASS ACTION COMPLAINT - Page 8**

48.     Parker did not audit the seminars after the fact.

49.     Parker's Continuing Education Department recognized the risk and potential liability to which Parker was exposing itself, and its leaders decided to continue sponsoring seminars—choosing revenue over the chiropractors who relied upon Parker.

50.     Parker continued to sponsor seminars for years, which further obfuscated the doctors' ability to learn, or even suspect, that Down's investment schemes were fraudulent.

51.     Based on Parker's continuing relationship with Down and his continued fraudulent representations, many of the chiropractors made additional investments, either into The Falls Event Center or Down's other businesses, such as   Even Stevens, Steve Hotel, construction company loans for Down's projects, or others.

**B. THE SCHEME COST PLAINTIFFS AND OTHERS LIKE THEM MILLIONS**

52.     The Plaintiffs relied on the relationship between Parker and Steve Down when considering the veracity of his representations and the propriety of his solicitations.

53.     During the seminars, often at the catered lunch, Down would take the stage *in the classroom*, in front of his captive audience of doctors, and solicit doctors to invest with his companies.  Down would speak of the companies' success and profitability, and he promised to generate returns on the amounts invested with him.

54.     Down made fraudulent statements about his companies' profitability, the equity in—and value of—the land that supposedly secured their investments, and the rate of return they could expect to receive.

55.     Down further discussed the alleged market for event centers, the supposed widespread demand, and what he alleged was a limited supply—which represented a burgeoning market of which the doctors could take advantage.

**ORIGINAL CLASS ACTION COMPLAINT - Page 9**

56.     These statements, buttressed by Parker's reputation, painted the picture of a safe, solvent, investment vehicle in which chiropractors could place their retirement funds and savings. That picture could not be farther from the truth.

57.     Klein, Maurer, Liringis, Antovich, Mantz, Hart, Molis, Cohen, and Carle were all familiar with Parker University and knew it to be a reputable, upstanding, trustworthy institution of chiropractic higher learning.

58.     Klein, Maurer, Liringis, Antovich, Mantz, Hart, Molis, Cohen, and Carle chose to attend these seminars, as opposed to countless others, in large part, because Parker University sponsored the seminars.

59.     Klein, Maurer, Liringis, Antovich, Mantz, Hart, Molis, Cohen, and Carle relied on Parker to have vetted the seminars, the speakers, and the speakers' materials to be presented at the Parker-sponsored seminars.

60.     Klein, Maurer, Liringis, Antovich, Mantz, Hart, Molis, Cohen, and Carle trusted that Parker performed due diligence on the instructors and presenters and that they were providing legitimate, trustworthy, reliable, and non-fraudulent information.

61.     Klein, Maurer, Liringis, Antovich, Mantz, Hart, Molis, Cohen, and Carle believed Parker had vouched for Down's credibility by allowing him to advertise himself on equal ground with the instructors and to make presentations from the classroom stage during Parker-sponsored continuing education seminars.

62.     As Klein, Maurer, Liringis, Antovich, Mantz, Hart, Molis, Cohen, and Carle listened to Down and his presentations, they suspended the skepticism they normally would have had with an investment opportunity that was presented to them because they relied on Parker not to present them with a fraudulent con man.

**ORIGINAL CLASS ACTION COMPLAINT - Page 10**

63.    Klein, Maurer, Liringis, Antovich, Mantz, Hart, Molis, Cohen, and Carle relied on the mistaken belief that information presented to them at a Parker-sponsored continuing education seminar would be truthful, accurate, reliable, and trustworthy.

64.    Klein, Maurer, Liringis, Antovich, Mantz, Hart, Molis, Cohen, and Carle relied on Parker and based their decision to invest on the mistaken belief that Parker was vouching for the credibility of Down, Down's Companies, and the investment opportunities Parker allowed him to present at Parker-sponsored continuing education seminars.

65.    Plaintiff Dr. Klein received or viewed Parker's advertisement in 2012.  She believes the advertisement specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down. Dr. Klein signed up for and attended the seminar held by Parker University in Monterrey, California.  While at the first seminar, she heard Down advertise his business opportunity and tout returns that looked attractive, and she invested soon thereafter. But for Parker's sponsorship, Dr. Klein would not have invested.

66.    Plaintiff Dr. Maurer first received or viewed Parker's advertisements in 2012. He believes the advertisements specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down. Dr. Maurer signed up for and attended the seminars held by Parker University in Sacramento, California and in Elk Grove, California. While at the first seminar, he heard Down advertise his business opportunity and tout returns that looked attractive, and he invested soon thereafter. But for Parker's sponsorship, Dr. Maurer would not have invested.

67.    Plaintiff Dr. Liringis received or viewed Parker's advertisement in or about November 2013.  He believes the advertisement specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down. Dr. Liringis signed up for and attended the seminar held by Parker University in Charlotte, North Carolina on December 7-8, 2013.  A copy of the contract between Parker and FCEA is attached as Exhibit A.  It requires that Parker must approve all seminar advertising, marketing, public communications, and promotional materials.

ORIGINAL CLASS ACTION COMPLAINT - Page 11

While at the seminar,  Dr. Liringis heard Down advertise his business opportunity and tout returns that looked attractive, and he invested soon thereafter.  But for Parker's sponsorship, Dr. Liringis would not have invested.

68.     Plaintiff Dr. Antovich received or viewed Parker's advertisement in 2012. He believes the advertisement specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down. Dr. Antovich signed up for and attended the seminar held by Parker University in Elk Grove, California. While at the seminar, he heard Down advertise his business opportunity and tout returns that looked attractive, and he invested soon thereafter. But for Parker's sponsorship, Dr. Antovich would not have invested.

69.     Plaintiff Dr. Mantz received or viewed Parker's advertisements in 2016. He believes the advertisements specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down.  Dr. Mantz signed up for and attended the seminars held by Parker University in Elk Grove, California. While at the seminar, he heard Down advertise his business opportunity and tout returns that looked attractive, and he invested soon thereafter. But for Parker's sponsorship, Dr. Mantz would not have invested.

70.     Plaintiff Dr. Hart received or viewed Parker's advertisement in or about October 2015.  The advertisement specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down.  A copy of the advertisement is attached as Exhibit B.  Dr. Hart signed up for and attended the seminars held by Parker University in Denver, Colorado on February 7, 2015 and November 14, 2015. While at the seminar, she heard Down advertise his business opportunity and tout returns that looked attractive, and she invested soon thereafter. But for Parker's sponsorship, Dr. Hart would not have invested.

71.     Plaintiff Dr. Molis received or viewed Parker's advertisement in or about September 2013.  He believes the advertisement specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down. Dr. Molis signed up for and attended the seminar

**ORIGINAL CLASS ACTION COMPLAINT - Page 12**

held by Parker University in Salt Lake City, Utah on October 19, 2013. While at the seminar, he heard Down advertise his business opportunity and tout returns that looked attractive, and he invested soon thereafter. But for Parker's sponsorship, Dr. Molis would not have invested.

72.     Plaintiff Dr. Cohen received or viewed Parkers' advertisements in 2012.  He believes the advertisements specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down. Dr. Cohen signed up for and attended the seminars held by Parker University in Las Vegas, Nevada, and El Segundo and Costa Mesa, California. While at the seminars, he heard Down advertise his business opportunity and tout returns that looked attractive, and he invested soon thereafter. But for Parker's sponsorship, Dr. Cohen would not have invested.

73.     Plaintiff Dr. Carle received or viewed Parkers' advertisement in or about December 2015.  He believes the advertisement specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down. Dr. Carle signed up for and attended the seminar held by Parker University in Orlando, Florida.  A copy of the seminar confirmation listing Dr. Mally and . Down as speakers is attached as Exhibit C.  While at the seminar, he heard Down advertise his business opportunity and tout returns that looked attractive, and he invested soon thereafter. But for Parker's sponsorship, Dr. Carle would not have invested.

74.     Down presented false information about his companies' growth and profitability. Akin to a ponzi scheme, Down encouraged Plaintiffs to invest more and to reinvest alleged gains and earned interest, which protected him from having to pay them money he did not  have, and prolonged the scheme.  It also provided a facially legitimate reason why the Plaintiffs were not seeing any tangible profit.

75.     In all, on information and belief, Down raised more than $120 million from investors.

76.      Plaintiffs were invited to stockholder meetings and galas designed to fool them into believing that the companies in which they invested were financially solvent and prosperous.

ORIGINAL CLASS ACTION COMPLAINT - Page 13

These events were also designed to prevent Plaintiffs from learning the truth, even in the exercise of significant diligence.

77.    Plaintiffs were continually shown false accounting figures and profitability information, and other fraudulent statements that prevented them from learning, even in the exercise of significant diligence, that they had been defrauded and that the alleged investment opportunities were fraudulent schemes.

78.    On May 10, 2018, the United States Securities and Exchange Commission filed a Complaint against Steve Down in Federal District Court in Utah (the "SEC Case") alleging the contours of his investment scheme. This is the first time the fraudulent nature of the entire investment scheme was known or knowable.

79.    On May 11, 2018, the Court signed a Final Judgment against Down in the SEC Case ordering him to pay $150,000 in penalties under the Securities and Exchange Act.

80.    Importantly, even in the exercise of reasonable diligence, doctors and chiropractors would not stumble upon a single filing in a federal court across the country from their homes and businesses. It took some time for the information to proliferate and reach the spheres of information to which they had access or could discover.

81.    On July 11, 2018, The Falls Event Center filed for Chapter 11 Bankruptcy.

82.    On March 21, 2019, Even Stevens filed for Chapter 11 Bankruptcy.

83.    Each of the Plaintiffs lost the entire amount of their investment in Steve Down's fraudulent schemes.

## V.

## CLASS ALLEGATIONS

84.    The FACTUAL ALLEGATIONS above are hereby incorporated by reference as if fully set forth herein.

85.    This action is brought on behalf of a class consisting of the following persons:

ORIGINAL CLASS ACTION COMPLAINT - Page 14

All ascertainable persons in the United States who, between January 1, 2012 and July 11, 2018, attended a Parker seminar featuring Steve Down, and who invested in one or more of Down's businesses. Excluded from the Class are Defendant, its corporate parent, subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, assigns of any such excluded persons or entities, and the attorneys for Plaintiff herein.  Also excluded from the Class are any judges presiding over these proceedings and their immediate family members.

(the "Class").

86.    **Typicality**:  Plaintiffs' claims are typical of other Class members' claims because Plaintiffs, like every other Class member,  were exposed to virtually identical conduct and omissions by Parker, and  were subjected to virtually identical misrepresentations by Parker.

87.    **Numerosity**:  The members of the Class are so numerous that joinder of all members is impracticable.  While the exact numbers of Class members are unknown to Plaintiffs at this time, Plaintiffs note that Parker sponsored at least 50 seminars featuring Down, with several attendees  at each.

88.    **Ascertainability**.  The identities of individual Class members are readily ascertainable through appropriate discovery from records maintained by Defendant and its agents.

89.    **Superiority**:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable, the likelihood of individual Class members prosecuting separate claims is remote, and individual members do not have a significant interest in individually controlling the prosecution of separate actions.  No difficulty will be encountered in this case's management to preclude maintenance as a class action.

90.    **Common Questions of Law and Fact Predominate**:  The questions of law and fact common to the Class predominate over questions affecting only individuals.  Among the questions of law and fact common to the Class are:

✓  Whether class members were misled;

✓  Whether class members received improper advertising;

✓  Whether class members were lured under false pretenses;

✓  Whether Defendant misrepresented the sponsorship of Down;

**ORIGINAL CLASS ACTION COMPLAINT - Page 15**

- ✓ Whether Defendant breached its contracts with the Class;
- ✓ Whether Defendant acted in a fraudulent or misleading way with regards to its seminars;
- ✓ Whether Defendant's revenues should be disgorged, and if so, the proper calculation therefor;
- ✓ Whether the Class is entitled to restitution and if so, the proper calculation of such restitution;
- ✓ Whether Defendant has been unjustly enriched at the expense of the Class;
- ✓ Whether Defendant violated state rules on continuing education;
- ✓ Whether Defendant violated state laws;
- ✓ Whether the Class is entitled to relief;
- ✓ Whether the Class  is entitled to damages, and if so, the proper calculation of said damages.

91.    **Manageability**: The Class litigation will be manageable because all issues are nearly identical, and individualized calculation of damages can be accomplished methodically by the use of data and information provided by Plaintiffs and by Defendant, Down, and their agents.

92.    **Adequacy**:  Plaintiffs can fairly and adequately represent the Class's interests; Plaintiffs have no conflicts of interest with other Class members, and have retained counsel competent and experienced in class action and complex civil litigation.

## VI.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### NEGLIGENCE

93.    Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth herein.

94.    Parker breached its duty to act as a reasonable university when sponsoring continuing educations seminars.

95.    Further, Parker had a statutory duty to follow the relevant state chiropractic board rules when sponsoring continuing education seminars.

**ORIGINAL CLASS ACTION COMPLAINT - Page 16**

96.     Defendant Parker breached its duties and was negligent as follows, without limitation, and as may be shown at trial:

    a. Sponsoring continuing education seminars with Steve Down and his companies FCEA or Financially Fit, LLC;

    b. Failing to perform any due diligence on Down and/or his companies prior to sponsoring his seminars across the country;

    c. Allowing Down to give presentations in the classroom at continuing education seminars sponsored by Parker where he bilked attendees out of millions;

    d. Sponsoring seminars with Steve Down in which he gave investment presentations on stage in violation of state board chiropractic continuing education rules, and state administrative code and statutory provisions, including, but not limited to:

        i.   California Code of Regulations 16 CCR §§ 362 & 363;

        ii.  Texas 22 TAC §§73.3 & 73.7;

        iii. North Carolina Rule - 21 NCAC §10.0207 – Continuing Education Seminars;

        iv.  Nevada Administrative Code NAC 634.385; or

        v.   Florida Administrative Code § 64B2-13.004.

    e. Submitting the applications for the continuing education courses without ensuring the content of Down's presentations;

    f. Failing to notify state boards that Down would be soliciting attendees and/or making presentations inside the classroom;

    g. Failing to ensure that the seminar marketing materials complied with state chiropractic board rules and/or did not contain materially misleading content;

    h. Failing to ensure marketing materials did not contain impermissible and misleading representations about Down, his role at the seminars, and whether his presentation was part of the seminars;

    i. Failing to supervise Down's presentations and/or to send representatives to the seminars to supervise and who could have ensured Down did not violate state board rules and defraud attending chiropractors;

    j. Unreasonably relying on Down to self police his participation in the seminars—something that was contrary to his own financial interest;

**ORIGINAL CLASS ACTION COMPLAINT - Page 17**

k. Failing to require that Down provide his lunchtime presentation slides or talking points to Parker so it could know what he was going to say to its continuing education attendees;

l. Failing to verify the information Down was providing to Parker's continuing education attendees was accurate or truthful;

m. Allowing Down to continually make false representations, including details of the investment opportunities, the financial stability and solvency of his companies, and the expected return to the investors; and

n. Failing to audit the seminars after the fact.

97. Defendant's acts and omissions, whether taken singularly or in combination, proximately and foreseeable caused Plaintiffs' injuries and damages.

## SECOND CAUSE OF ACTION
### CONCERT OF ACTION

98. Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth herein.

99. Parker and Steve Down jointly participated in a concerted action which resulted in a common tort and accomplished their purpose.

100. Each of Parker's negligent acts, including, but not limited to, those listed in Count 1, provided Steve Down substantial assistance in accomplishing a tortious result, and each of Parker's action constituted a breach of duty to the Plaintiffs.

101. Each of the breaches proximately caused Plaintiffs' damages.

102. By acting in concert with Steve Down, Parker is jointly and severally liable for his tortious conduct and for Plaintiffs' damages caused by Parker or Steve Down.

## THIRD CAUSE OF ACTION

### DECEPTIVE TRADE PRACTICES
### STATUTORY VIOLATIONS

103. Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth herein.

104. Plaintiffs are individuals and are "consumers" under their respective State Deceptive Trade Practices laws.

**ORIGINAL CLASS ACTION COMPLAINT - Page 18**

105.    Plaintiffs purchased goods or services from Parker University by paying $35 for Parker to process their continuing education vouchers with respective state chiropractic boards and by attending a seminar at which Parker was compensated for sponsoring the seminar and for each attendee.

106.    Parker's conduct constituted false, misleading, or deceptive acts or practices, including, but not limited to:

        a.    Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

        b.    Causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

        c.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that person has sponsorship, approval, status, affiliation, or connection that person does not have;

        d.    Falsely representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model; and

        e.    Failing to disclose information concerning goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer into a transaction the consumer would not have entered into had the information been disclosed.

Each of the above is a violation of each Plaintiff's respective state consumer Deceptive Trade Practices law.

107.    Parker permitted Down to advertise the seminars either directly or through his companies, making Down and/or his companies Parker's agents for purposes of the advertisements that went out.

108.    Each plaintiff was exposed to, Parker's seminar advertisements which made clear that Parker was sponsoring the speakers, including Steve down or his companies.  For example,

109.    Plaintiff Dr. Klein received or viewed Parkers' advertisement in 2012.  She believes the advertisement specifically noted that Parker was sponsoring the seminar, and the speakers

**ORIGINAL CLASS ACTION COMPLAINT - Page 19**

included Steve Down. Dr. Klein signed up for and attended the seminars held by Parker University in Monterrey, California.  While at the first seminar, she heard Down advertise his business opportunity and tout returns that looked attractive and invested soon thereafter. But-for Parker's sponsorship, Dr. Klein would not have invested.

110.    Plaintiff Dr. Maurer first received or viewed Parkers' advertisements in 2012. He believes the advertisements specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down. Dr. Maurer signed up for and attended the seminars held by Parker University in Sacramento, California and in Elk Grove, California. While at the first seminar, he heard Down advertise his business opportunity and tout returns that looked attractive and invested soon thereafter. But-for Parker's sponsorship, Dr. Maurer would not have invested.

111.    Plaintiff Dr. Liringis received or viewed Parkers' advertisement on or about November 2013.  He believes the advertisement specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down. Dr. Liringis signed up for and attended the seminars held by Parker University in Charlotte, North Carolina on December 7-8, 2013.  A copy of the contract between Parker and FCEA is attached as Exhibit A.  It requires that Parker must approve all seminar advertising, marketing, public communications, and promotional materials. While at the seminar, he heard Down advertise his business opportunity and tout returns that looked attractive and invested soon thereafter.  But-for Parker's sponsorship, Dr. Liringis would not have invested.

112.    Plaintiff Dr. Antovich received or viewed Parkers' advertisement in 2012. He believes the advertisement specifically noted that Parker was sponsoring the seminar. and the speakers included Steve Down. Dr. Antovich signed up for and attended the seminars held by Parker University in Elk Grove, California. While at the seminar, he heard Down advertise his business opportunity and tout returns that looked attractive, and he invested soon thereafter. But-for Parker's sponsorship, Dr. Antovich would not have invested.

**ORIGINAL CLASS ACTION COMPLAINT - Page 20**

113.    Plaintiff Dr. Mantz received or viewed Parkers' advertisements in 2016. He believes the advertisements specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down.  Dr. Mantz signed up for and attended the seminars held by Parker University in Elk Grove, California. While at the seminar, he heard Down advertise his business opportunity and tout returns that looked attractive, and he invested soon thereafter. But-for Parker's sponsorship, Dr. Mantz would not have invested.

114.    Plaintiff Dr. Hart received or viewed Parkers' advertisement on or about October 2015.  The advertisement specifically noted that Parker was sponsoring the seminar and the speakers included Steve Down.  A copy of the advertisement is incorporated attached to this Complaint as Exhibit B.  Dr. Hart signed up for and attended the seminars held by Parker University in Denver, Colorado on February 7, 2015 and November 14, 2015. While at the seminar, she heard Down advertise his business opportunity and tout returns that looked attractive. But-for Parker's sponsorship, Dr. Hart would not have invested.

115.    Plaintiff Dr. Molis received or viewed Parkers' advertisement on or about September 2013.  He believes the advertisement specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down. Dr. Molis signed up for and attended the seminars held by Parker University in Salt Lake City, Utah on October 19, 2013. While at the seminar, he heard Down advertise his business opportunity and tout returns that looked attractive and invested soon thereafter. But-for Parker's sponsorship, Dr. Molis would not have invested.

116.    Plaintiff Dr. Cohen received or viewed Parkers' advertisements in 2012.  He believes the advertisements specifically noted that Parker was sponsoring the seminar and the speakers included Steve Down. Dr. Cohen signed up for and attended the seminars held by Parker University in Las Vegas, Nevada, El Segundo, California, and Costa Mesa, California. While at the seminars, he heard Down advertise his business opportunity and tout returns that looked attractive. But-for Parker's sponsorship, Dr. Cohen would not have invested.

ORIGINAL CLASS ACTION COMPLAINT - Page 21

117.    Plaintiff Dr. Carle received or viewed Parkers' advertisement on or about December 2015. He believes the advertisement specifically noted that Parker was sponsoring the seminar, and the speakers included Steve Down. Dr. Carle signed up for and attended the seminars held by Parker University in Orlando, Florida. A copy of the seminar confirmation listing Dr. Mally and Mr. Down as speakers is attached as Exhibit C. While at the seminar, he heard Down advertise his business opportunity and tout returns that looked attractive and invested soon thereafter. But-for Parker's sponsorship, Dr. Carle would not have invested.

118.    Each Plaintiff detrimentally relied on Parker's false, misleading, or deceptive acts or practices.

119.    Parker impliedly warrantied the character, quality, and trustworthiness of the information Down presented to Plaintiffs at continuing education seminars it sponsored; Parker's actions constitute a breach of implied warranty to Plaintiffs; and such breach was a producing cause of Plaintiffs' damage.

120.    Parker's unfair and/or deceptive conduct was a producing and proximate cause of Plaintiffs' damages.

121.    Plaintiffs seek actual economic damages for the amounts they were fraudulently induced into investing with Steve Down and his companies.

122.    Parker's violations were committed "knowingly" as that term is defined in the respective consumer protection and deceptive trade practices statutes, and Plaintiffs therefore seek mental anguish damages as a result of losing their life savings and retirement savings.

123.    Parker's violations were committed "knowingly" as that term is defined in the respective consumer protection and deceptive trade practices statutes, and Plaintiffs therefore seek all available damages, including any allowable punitive damages and treble actual economic damages.

**ORIGINAL CLASS ACTION COMPLAINT - Page 22**

124.    Parker's violations were committed "intentionally" as that term is defined in the respective consumer protection and deceptive trade practices statutes, and Plaintiffs therefore seek all available damages, including any allowable punitive damages and treble mental anguish damages.

125.    Plaintiffs seek recovery of all costs and attorneys' fees awardable, pursuant to the respective consumer protection and deceptive trade practices statutes..

## FOURTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

126.    Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth herein.

127.    As set forth above, Plaintiffs signed up to attend continuing education seminars sponsored by Parker University in order to satisfy their annual state chiropractic board requirements.

128.    Advertisements for the seminars listed the chiropractic instructors and Steve Down, without distinguishing between them or making it clear that Parker did not consider Down a Parker-endorsed presenter, which misrepresented to the attendees that Steve Down was an approved speaker and was part of the seminar.

129.    Parker was responsible for ensuring that the seminar advertisements accurately conveyed who the seminar speakers were and approving content provided by them.

130.    Parker negligently failed to ensure the seminar advertisements accurately conveyed speaker and content information.

131.    By allowing the seminar advertisements to mispresent that Down was an approved speaker, Parker misrepresented to the seminar attendees that Down was a credible, legitimate presenter who could be trusted.  It also misrepresented to the attendees that Parker had vetted Down and the content he provided to the seminar attendees.

**ORIGINAL CLASS ACTION COMPLAINT - Page 23**

132.    Parker further misrepresented its approval and endorsement of Down by allowing him to take the stage in the classroom at its seminars and deliver his investment presentation from the same stage as the substantive chiropractic instructors.

133.    By advertising Down as an approved and endorsed speaker and allowing him to present from the classroom stage, Parker misrepresented its affiliation with Down and misrepresented to the attendees that it had vetted Down, approved his presentation, vouched for his credibility, and they provided him and his fraudulent presentation the legitimacy that fooled the doctors into trusting him.

134.    Plaintiffs relied on Parker's misrepresentations, its apparent relationship with Down, a its vouching for Down's credibility, status, legitimacy, and its involvement with Parker when deciding whether investing in The Falls Event Center and Down's other businesses was a sound financial decision.

135.    Plaintiffs relied on Parker's misrepresentations, its apparent relationship with Down, its vouching for Down's credibility, status, legitimacy, and its involvement with Parker when deciding whether Down and Down's Businesses were legitimate enterprises, as opposed to fraudulent ponzi schemes.

136.    Each of Parker's misrepresentations were material facts upon which Plaintiffs relied.

137.    As described above, Parker allowed Down to act as its agent, delegating to Down and his business the role of selecting the speakers, advertising the seminar, and ensuring that the seminars complied with state rules and were not injurious to attendees, as well as cloaking Down with the its imprimatur allowing him to be purportedly speaking on behalf of Parker or, at a minimum, with Parker's endorsement and blessing.

138.    Further, Parker adopted Down's statements as if Parker made them itself by allowing Down to advertise himself on equal footing with the instructors and other presenters and

by allowing Down to take the classroom stage and deliver his fraudulent presentation without informing the attendees that his Down's presentation was not part of the seminar.  Parker allowed Down to seamlessly intertwine his presentation into the seminar, misleading seminar attendees into believing it was Parker-vetted, Parker-endorsed, and Parker-approved.

139.    Each of these misrepresentations were made with the intent that Plaintiffs would rely on them,  to induce doctors to attend the seminars, and to increase the revenue Parker received.

140.    Parker's name, reputation, and place in the chiropractic industry caused Plaintiffs to justifiably rely on these misrepresentations.

141.    Parker performed no due diligence about Down, his seminar presentations, or his businesses and investment schemes, and Parker had no reasonable basis to allow him to advertise himself as a presenter and give presentations to unsuspecting doctors, while using the Parker University name and reputation.

142.    Parker's misrepresentations caused Plaintiffs to invest their money with Steve Down and Down's Companies, which resultantly caused them to lose their entire investments and suffer the damages they seek to recover in this lawsuit.

**FIFTH CAUSE OF ACTION**
**NEGLIGENT SUPERVISION/NEGLIGENT ENTRUSTMENT**

143.    Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth herein.

144.    Parker University had a duty to supervise any sponsor, including Steve Down, to ensure that the sponsor's advertising materials, seminar materials, and seminar presentation complied with all state chiropractic board rules, and that its attendees were not taken advantage of and deceived while attending a continuing education seminar it sponsored.

145.    Parker knew, and should have known, that hiring, co-sponsoring seminars, and allowing Down to self-police his advertising and seminar conduct created a particular risk of harm to its attendees, and that particular harm materialized.

**ORIGINAL CLASS ACTION COMPLAINT - Page 25**

146.    Parker had a duty to ensure that all state chiropractic board rules were followed, and Down became Parker's agent when Parker failed to send representatives to the seminar to ensure the seminars, in fact, complied with all state chiropractic board rules and instead delegated that responsibility to Down and his staff.

147.    Parker is subject to liability for harm to Plaintiffs caused by the conduct of its agent, Down, because the harm was caused by Parker's negligence in selecting, retaining and failing to appropriately supervise and otherwise control its agent.

148.    Parker's negligence proximately caused the damages Plaintiffs now seek to recover in this lawsuit.

### SIXTH CAUSE OF ACTION
#### CALIFORNIA UNFAIR COMPETITION LAW
#### CAL. BUS. & PROF. CODE § 17200
#### ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS
#### WHO ATTENDED SEMINARS IN CALIFORNIA

149.    Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth herein.

150.    Parker University engaged in fraudulent, unfair, and unlawful business practices and in unfair, deceptive, and misleading advertising in connection with its sponsorship of continuing education seminars with Down and Down's Companies.

151.    Parker's seminar attendees thought they were signing up for legitimate continuing education seminars, and while they did receive continuing education, the seminars were actually a pretext to fraudulently solicit investments from them.

152.    Parker received significant monies and generated significant revenue for its Continuing Education Department, by engaging in these fraudulent, unfair, and unlawful business practices and by using its name and reputation to lure unsuspecting doctors to attend the seminars, while it looked the other way, allowing Down to make his fraudulent investment pitch and to keep the revenue stream flowing.

**ORIGINAL CLASS ACTION COMPLAINT - Page 26**

153.    As set forth above, Plaintiffs signed up to attend continuing education seminars sponsored by Parker University in order to satisfy their annual state chiropractic board requirements.

154.    Advertisements for the seminars listed the chiropractic instructors and Steve Down, without distinguishing between them or making it clear that Parker did not consider Down a Parker-endorsed presenter, which misrepresented to the attendees that Steve Down was an approved speaker and was part of the seminar.

155.    Parker was responsible for ensuring that the seminar advertisements accurately conveyed who the seminar speakers were and approving content they were providing.

156.    Parker negligently failed to ensure the advertisements accurately conveyed speaker and content information.

157.    By allowing the advertisements to mispresent that Down was an approved speaker, Parker misrepresented to the attendees that Down was a credible, legitimate presenter who could be trusted.  Parker further negligently mispresented that they had vetted Down and the content he provided to the attendees at the seminar.

158.    Parker further misrepresented its approval and endorsement of Down by allowing him to take the stage in the classroom at  its seminars and deliver his investment presentation from the same stage as the substantive chiropractic presenters.

159.    By advertising Down as an approved and endorsed speaker and allowing him to present from the classroom stage, Parker misrepresented its affiliation with Down to the attendees that it had vetted Parker, vouched for his credibility, and provided him and his fraudulent presentation the legitimacy that fooled the doctors into trusting him.

160.    Plaintiffs relied on Parker's misrepresentations,   its apparent relationship with Down, its vouching for Down's credibility, status, legitimacy, and its  involvement with Parker

**ORIGINAL CLASS ACTION COMPLAINT - Page 27**

when deciding whether investing in The Falls Event Center and Down's Companies was a sound financial decision.

161.    Plaintiffs relied on Parker's misrepresentations,  its apparent relationship with Down,  its vouching for Down's credibility, status, legitimacy, and its involvement with Parker when deciding whether Down and Down's Companies were legitimate enterprises, as opposed to fraudulent ponzi schemes.

162.    Based on these reliances, the Plaintiffs decided to invest their savings,  and theylost their entire investments and suffered the damages they seek to recover in this lawsuit.

### SEVENTH CAUSE OF ACTION
#### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

163.    Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth herein.

164.    Parker breached its duty to act as a reasonable university when sponsoring continuing education seminars.

165.    Further, Parker had a statutory duty to follow the relevant state chiropractic board rules when sponsoring continuing education seminars.

166.    Defendant Parker breached its duties and was negligent as follows, without limitation, and as may be shown at trial:

    a.  Sponsoring continuing education seminars with Steve Down and  Down's companies FCEA or Financially Fit, LLC;

    b.  Allowing Down to give presentations in the classroom at continuing education seminars sponsored by Parker;

    c.  Sponsoring seminars with Steve Down in which he gave investment presentations on stage in violation of state board chiropractic continuing education rules, and state administrative code and statutory provisions including, but not limited to:

        i.    California Code of Regulations 16 CCR §§ 362 & 363;

        ii.   Texas 22 TAC §§73.3 & 73.7;

ORIGINAL CLASS ACTION COMPLAINT - Page 28

iii.   North Carolina Rule - 21 NCAC §10.0207 – Continuing Education Seminars;

iv.   Nevada Administrative Code NAC 634.385.

d.  Failing to properly submit the applications for the continuing education courses;

e.  Failing to notify state boards that Down would be making presentations on stage in the classroom;.

f.  Failing to ensure marketing materials complied with state chiropractic board rules;

g.  Failing to ensure marketing materials did not contain impermissible and misleading representations about Down, his role at the seminars, and whether his presentation was part of the seminars;

h.  Failing to send representatives to the seminars  who could have ensured Down did not violate state board rules and defraud attending chiropractors;

i.  Relying on Down to self-police the seminars—something that was contrary to his own financial interest;

j.  Failing to perform any due diligence on Down and Down's companies prior to sponsoring seminars with him across the country;

k.  Failing to require that Down provide his lunchtime presentation slides or talking points to Parker so it could know what he was going to say;

l.  Failing to verify the information Down was providing to Parker's continuing education attendees was accurate or truthful;

m.  Allowing Down to continually make false representations, including details of the investment opportunities, the financial stability and solvency of his companies, and the expected return to the investors; or

n.  Failing to audit the seminars after the fact.

167.   As a result of Parker's negligence, Plaintiffs invested large sums of money—some their entire retirement savings—with Steve Down and Down's Companies and lost their entire investment in his fraudulent schemes.

168.   Plaintiffs experienced severe emotional distress as a result of losing their retirement savings, money they had worked their entire lives to earn.

**ORIGINAL CLASS ACTION COMPLAINT - Page 29**

169.   Plaintiffs experienced severe emotional distress as a result of not knowing how much longer they would now need to work or if they would ever be able to retire.

170.   The severe emotional distress Plaintiffs experienced and continue to experience is serious, substantial, enduring, and is not trivial or transitory.

171.   Each of Defendant's acts and omissions, singularly or in combination, was a proximate cause of Plaintiffs' injuries and damages.

**VII.**

**RELIEF REQUESTED**

172.   Plaintiffs pray for their actual/compensatory damages and/or restitution in an amount to be proven at trial, including, but not limited to:

      a.   Order certifying Class action treatment;

      b.   Actual economic damages;

      c.   Mental anguish damages;

      d.   Emotional distress damages;

      e.   Punitive or treble damages;

      f.   Recoverable and reasonable costs and attorneys' fees;

      g.   Pre-judgment interest;

      h.   Post-judgment interest; and

      i.   Any and all other relief to which Plaintiffs may show themselves entitled.

**VIII.**

**TRIAL BY JURY REQUESTED**

173.   Plaintiffs request trial by jury on all matters and issues triable to a jury under applicable law.

**ORIGINAL CLASS ACTION COMPLAINT - Page 30**

1

Dated:  May 9, 2020

Respectfully submitted,

2

**SBAITI & COMPANY PLLC**

3

/s/ *Mazin A. Sbaiti*

4

**Mazin A. Sbaiti**
Texas Bar No. 24058096

5

mas@sabaitilaw.com
**Brad J. Robinson**

6

Texas Bar No. 24058076
bjr@sbaitilaw.com

7

JPMorgan Chase Tower
2200 Ross Avenue – Suite 4900W

8

Dallas, TX  75201
T:  (214) 432-2899

9

F:  (214) 853-4367

10

**Counsel for Plaintiffs**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORIGINAL CLASS ACTION COMPLAINT - Page 31**