**SBAITI & COMPANY PLLC**
Mazin A. Sbaiti, Esq.
California Bar No. 275089
2200 Ross Avenue
Suite 4900W
Dallas, Texas 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com
*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **DR. LAURIE KLEIN, DR. CRAIG MAURER, DR. STEVE LIRINGIS AND LISA LIRINGIS, DR. TODD ANTOVICH AND CAROL ANTOVICH, DR. RANDY MANTZ AND CARLENE MANTZ, DR. PAMELA HART, DR. GREG MOLIS, DR. LES COHEN, DR. KEN CARLE, DR. SHANE STAKER AND KELLY STAKER, DR. KEITH ALEXANDER, BETSY STUMMER, DR. JOHN SUTO AND DR. BILLIE SUTO, DR. JEFFREY FAILING, DR. MICHAEL GAGNON, DR. CRAIG LADOW, MIMI H. DUONG, DR. CRAIG THORNALLY, DR. MARK de DUBOVAY AND BARBARA de DUBOVAY, DR. RONALD B. SANDERS, DR. PEGGY ANDERSON, AND DR. PAM WACHHOLZ AND BOB NESTE** | **Civil Action No. 20-CV-03194-RS** |
| | **PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS** |
| | **Demand for Jury Trial** |
| | **Complaint Filed:  May 9, 2020**<br>**Trial Date:       None Set** |
| | **Hearing Date:    February 11, 2021**<br>**1:30 p.m.** |
| *Plaintiffs,* | **Judge:          Hon. Richard Seeborg** |
| **vs.** | |
| **PARKER UNIVERSITY,** | |
| *Defendant.* | |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF ISSUES ................................................................................... 1

III.    SUMMARY OF FACTS ....................................................................................... 2

IV.     ARGUMENT & AUTHORITIES ......................................................................... 4

        A.      Negligence ................................................................................................ 4

                1.      Parker's No-Duty Argument Takes Significant Liberties
                        with the Facts ................................................................................ 4

                2.      Parker's No-Representation Argument Disregards
                        Plaintiffs' Legal Theories ............................................................. 6

                3.      Parker's No-Violation-of-Regulations Argument is
                        Contradicted by Its Own Evidence ............................................... 9

                4.      Parker's Negligent Hiring/Entrustment Defense is
                        Misguided and Wholly Dependent on Previously
                        Addressed Arguments .................................................................. 13

                5.      Parker's Three-Sentence-Concerted Action Argument
                        Likewise Depends on Its Previous Arguments ........................... 15

        B.      Deceptive Practices ................................................................................ 16

                1.      Parker's No-Deceptive Practice Argument Again
                        Takes Liberties with the Facts .................................................... 16

                2.      Parker's No-Pre-Suit-Notice Argument Does Not
                        Require Dismissal with Prejudice ............................................... 19

                3.      Parker's Non-Consumers Argument Focuses on the
                        Wrong Transaction ...................................................................... 20

                4.      Parker's Publisher-Exemption Defense Is Not
                        Established by the Pleadings ....................................................... 20

        C.      Unfair Competition ................................................................................ 22

V.      CONCLUSION

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. SeaWorld Parks & Entm't, Inc.*,
No. 15-cv-02172-JSW, 2016 U.S. Dist. LEXIS 100504 (N.D. Cal. 2016)................19

*Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg.
& Sales Practices Litig.)*, 299 F.R.D. 648 (S.D. Cal. 2014) ................................ 17-18

*Hatfield v. Halifax PLC*,
564 F.3d 1177 (9th Cir. 2009) .....................................................................19

*In re Fifth Third Bank, Nat'l Ass'n*,
719 S.E.2d 171 (2011).................................................................................17

*In re Ford Tailgate Litig.*,
No. 11-CV-2953-RS, 2014 U.S. Dist. LEXIS 199411 (N.D. Cal. 2014) ..................19

*Morgan v. AT&T Wireless Servs., Inc.*,
177 Cal. App. 4th 1235, 99 Cal. Rptr.3d 768 (2009) ....................................19

*Thorns v. Sundance Properties*,
726 F.2d 1417 (9th Cir. 1984) .....................................................................20


**Rules, Statutes and Regulations**

22 Tex. Admin. Code § 73.3 .........................................................................11

Cal. Civ. Code, § 1755 ................................................................................21

Cal. Code Regs. tit. 16, § 362.............................................................2, 11, 17

Cal. Code Regs. tit. 16, § 362(b) ...................................................................6

Cal. Code Regs. tit. 16, § 362(d) ............................................................. 11-12

Cal. Code Regs. tit. 16, § 362(d)(1) .........................................................12, 22

Cal. Code Regs. tit. 16, § 362(d)(4) .........................................................12, 22

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 10, 22

Restat 2d of Torts, § 302 ....................................................................................... 5

Restat 2d of Torts, § 308 ................................................................................... 5, 13

Restat 2d of Torts, § 876 ................................................................................. 1-2, 15

Restat 2d of Torts, § 877 ....................................................................................... 2

## **Other**

44 California Forms of Pleading and Practice—Annotated § 504.13(5) ........................ 21

https://courses.lumenlearning.com/atd-bmcc-criminaljustice/chapter/section-6-4-parole-probation-and-community-sanctions/ ............................................................................... 10

https://www.merriam-webster.com/dictionary/sponsor ................................................ 4-5, 7, 8

https://www.sec.gov/litigation/admin/ia1715.txt ........................................................ 14

# I. INTRODUCTION

Defendant Parker University ("Parker") asks this Court to dismiss Plaintiffs' action under Rule 12(b)(6) of the Federal Rules of Civil Procedure because, it says, Parker was merely a co-sponsor of the seminars where Plaintiffs were defrauded. Further, Parker says, its sponsorship role was merely a publisher, so its very limited role in the seminars did not even give rise to any duties to Plaintiffs. This characterization of Parker's role is inaccurate. And the allegations of the First Amended Class Action Complaint ("Complaint") contradict it.

# II. STATEMENT OF ISSUES

Parker's motion nonetheless raises a difficult question: Whether one party's negligence can make it responsible for the consequences of fraud committed by another, which Parker argues cannot be the case. Plaintiffs respectfully disagree with that view. But more importantly, the issue is not quite that cleanly presented here, where Parker and Down[1] jointly sponsored seminars, and it is those seminars whose conduct is alleged to be negligent.

Plaintiffs therefore submit that the issue properly before this Court is as follows: Whether negligence arising from Parker's concerted acts—both its agreement to conduct and its actual conducting of the seminars along with Down—can make it responsible for the very foreseeable result that customers of the seminar would be defrauded. Plaintiffs submit that the answer to this question is a resounding yes. *See* Restatement (Second) of

---

[1] As in the First Amended Class Action Complaint, Plaintiffs here collectively reference Steve Down and the companies he owned and controlled as "Down."

**Plaintiff's Response to Defendant's Rule 12(b)(6) Motion to Dismiss – Page 1    No. 20-CV-03194-RS**

Torts § 876 (imposing liability "[f]or harm resulting to a third person from the tortious conduct of another . . . if he (a) does a tortious act in concert with the other or pursuant to a common design with him . . . [and] (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person"); *id.* § 877 (imposing liability "[f]or harm resulting to a third person from the tortious conduct of another [when one] . . . (b) conducts an activity with the aid of the other and is negligent in employing him").

### III. SUMMARY OF FACTS

This case arises out of Parker's provision of continuing-education seminars for chiropractors. Complaint, ¶¶ 1-2. The seminars were part of the university's continuing-education department and were co-sponsored by Down. *Id.* ¶¶ 25-27, 43. Parker and Down agreed to conduct ("co-sponsor") the seminars jointly and did so. *Id.* ¶¶ 1-2, 25-27. Only Parker, to an extreme extent, allowed Down to run them unsupervised. *Id.* ¶¶ 25-41. (This despite the university's regulatory obligation to provide oversight. *Id.* ¶¶ 45-46; 16 CA ADC § 362.)

Down—who had been previously charged by the SEC with running a Ponzi scheme—ran another Ponzi scheme, this time within the unsupervised, co-sponsored Parker seminars. Complaint ¶¶ 2, 37, 42, 53-73. The SEC and the trustee in Down's bankruptcy have both provided detailed accounts of this second scheme, *id.* ¶¶ 53-73, in which Plaintiffs were victims, *id.* ¶¶ 3, 74-103.

Plaintiffs attended the co-sponsored seminars, *id.* ¶¶ 74-103, lost millions in the Ponzi scheme, *id.* ¶¶ 3, 74-103, and sued Parker for negligence and statutory violations in

connection with the seminars, *id*. ¶¶ 114-153.

Although Parker would have this Court dismiss Plaintiffs' claims as implausible here, the slender reed on which its argument rests is a single line in a contract between the two co-sponsors, which states their intention that the agreement to work together would not create a partnership or joint venture.

Their intentions alone are not controlling on this issue. And far more importantly, their intentions are not inconsistent with the legal theories pleaded here: concerted action, apparent authority, and joint venture by estoppel, none of which require such intent. *See* Complaint ¶ 122 ("Parker and Down, as co-sponsors, acted concertedly, authorized each other's acts and omissions, and clothed one another with actual and apparent authority."); *id*. ¶ 123 ("Parker and Down jointly participated in a concerted action which resulted in a common tort and accomplished their purpose."); *id*. ¶ 43 ("Parker's Continuing Education Department, which housed the university's continuing-education platform, clothed Down with actual and/or apparent authority, authorizing and even requiring him to promote the continuing-education seminars at which he delivered his predatory sales pitches to chiropractors.").

These legal doctrines undermine each of the remaining arguments presented in Parker's motion.[2]  Because any one of them—concerted action or apparent authority or joint venture by estoppel—imputes responsibility for Down's acts to Parker, any one of

---

[2] Plaintiffs have not responded to any arguments concerning the claims of any out-of-state Plaintiffs because those arguments are the subject of Parker's Rule 12(b)(2) motion and will be addressed in Plaintiffs' response to it.

them likewise defeats the repetitive Parker-didn't-do-it contentions that those arguments rely on.

## IV. ARGUMENT & AUTHORITIES

### A.     Negligence

Parker offers five reasons it cannot, as a matter of law, be liable for its negligence. Significantly, not one of them denies the failure to exercise ordinary care.

#### 1.     Parker's No-Duty Argument Takes Significant Liberties with the Facts

Parker's lead argument is that it owed Plaintiffs no duty to use ordinary care in connection with the seminars they attended. Presenting its role in each "Parker seminar," *id*. ¶¶ 93, 98, 105, 106, as that of a mere co-sponsor, Parker fails to note that its counterpart, Down, was merely a co-sponsor as well. *See* Ex. A to Original Class Action Complaint (agreement referenced in Defendant's motion defining FCEA as co-sponsor and Down's signature on it) [hereinafter, "Co-Sponsorship Contract"]. Thus, if Parker were correct as to the limited role played by "co-sponsors" here, there would have been no one to actually conduct the seminar.

Obviously the use of "co-sponsor" in this setting refers to something quite different from the publisher/advertiser relationship that Parker attempts to analogize to. And it is telling that Parker fails to provide any reason for why it thinks it should be treated merely as a publisher here.

It is also telling that Parker provides no definition of the term "sponsor." Merriam-Webster defines it as follows:

1       : one who presents a candidate for baptism or confirmation and undertakes responsibility for the person's religious education or spiritual welfare

2       : **one who assumes responsibility for some other person or thing**

3       : **a person or an organization that** pays for or **plans and carries out a project or activity**

        especially: one that pays the cost of a radio or television program usually in return for advertising time during its course

https://www.merriam-webster.com/dictionary/sponsor (emphasis added). The first definition is obviously irrelevant, as is the "especially" provision, which refers to the kind of sponsoring described in the cases that Parker wrongly relies on. Definitions 2 and 3, on the other hand, are right on point. And both undermine the no-duty argument. Both "one who assumes responsibility for" a seminar and one who "plans or carries [it] out" have a duty to the seminar's participants to use ordinary care. *Cf.* Restatement (Second) of Torts § 302 (defining actionable negligence as including any "negligent act or omission . . . which involves an unreasonable risk of harm to another through . . . the foreseeable action of . . . a third person"); *id* at comment a ("In general, anyone who does an affirmative act is under a duty to others to exercise [reasonable] care . . . .").

This duty includes the obligation to use care in authorizing others to participate in Parker seminars. *Compare* Complaint ¶¶ 118-20, *with* Restatement (Second) of Torts § 308 ("It is negligence to permit a third person to . . . engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.").

**Plaintiff's Response to Defendant's Rule 12(b)(6) Motion to Dismiss – Page 5   No. 20-CV-03194-RS**

To the extent Parker contends that it actually is a "publisher" or that the First Amendment limits its liability here in some way, the failure to provide any explanation of these positions puts Plaintiffs in an awkward position with no ability to brief the unexplained position and with no real recourse but to request a sur reply once Parker, presumably, provides an explanation in its reply.

Regardless, at bottom, Parker is merely saying it had no duty because it did not actually do anything in connection with the seminars. This argument is belied by the Co-Sponsorship Agreement, which required that Down, the "speakers, and students shall comply with all reasonable policies and procedures of Parker." Co-Sponsorship Agreement at 2. It is belied by the law, which the Co-Sponsorship Agreement also includes among the oversight responsibilities of Parker. *Id.* (requiring Down to comply with "all applicable statutes and regulations and ***as instructed by Parker***" (emphasis added)). It is further belied by the definition of the term "sponsor" as noted above. And it is undermined by the legal doctrines of concerted action, apparent authority, and joint venture by estoppel.

Simply put, these were Parker seminars, and at least at this stage of the case, Parker cannot deny that they were. It therefore owed Plaintiffs no less than the duty of ordinary care in acting as "provider" of the seminars under 16 CA ADC § 362(b), as described in detail below.

### 2. Parker's No-Representation Argument Disregards Plaintiffs' Legal Theories

Parker's liability for negligent misrepresentation, of course, hinges on agency principles because an organization is powerless to act except through its agents. And Parker

seems to recognize this, as its entire second argument is devoted to denying that Down was authorized to act or speak on Parker's behalf.

But as indicated above in the Introduction, Parker's denials of Down's actual authority and agency are in no way inconsistent with Plaintiffs' allegations of concerted action, apparent authority, or joint venture by estoppel. *See* Complaint. ¶ 43 ("Parker's Continuing Education Department, which housed the university's continuing-education platform, clothed Down with actual and/or apparent authority, authorizing and even requiring him to promote the continuing-education seminars at which he delivered his predatory sales pitches to chiropractors."); *id*. ¶ 122 ("Parker and Down, as co-sponsors, acted concertedly, authorized each other's acts and omissions, and clothed one another with actual and apparent authority."); *id*. ¶ 123 ("Parker and Down jointly participated in a concerted action which resulted in a common tort and accomplished their purpose.").

To put a finer point on it, Plaintiffs allege that Down spoke at and on behalf of the seminars themselves, and that the seminars constituted a concerted action and/or joint venture by estoppel, which belonged to the two co-sponsors. Thus, it is a two-step. (1) As a sponsor—per Merriam-Webster, "one who assumes responsibility for" and "plans and carries out" the seminars—Parker has liability for the acts and representations of the seminars. And (2) Down—a co-sponsor who was contractually authorized to speak for the seminars, Complaint ¶ 43—did act and speak on the seminar's behalf. The Parker seminars therefore are accountable for Down's representations.

In disputing this conclusion, Parker's motion awkwardly employs the adjective "factual": "There is no ***factual*** allegation that Down and FCEA were authorized to act,

1
2
3
4
5
6

or even purported to act on Parker's behalf with respect to any third party, including the Plaintiffs." Brief at 6 (emphasis added). Perhaps Parker believes that the above-cited paragraphs of the Complaint—which explicitly state the opposite—are not "factual" allegations. If so, it is only because Parker has mischaracterized the facts by concocting a strained definition of "co-sponsor."

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

In any case, the seminars Plaintiffs attended were "Parker seminars." Complaint ¶¶ 93, 98, 105, 106. They were part of Parker's continuing education department. *Id*. ¶¶ 43, 50, 143. They were jointly "sponsored"—per Merriam-Webster, that means planned and carried out—by Parker and Down. Complaint ¶¶ 1-2. And contractually, Parker retained veto rights over all the advertising and promotional content, which Down was explicitly authorized (subject to veto) to create. *Id*. ¶¶ 26-27. How these allegations fail to "factually" allege agency and/or apparent agency is beyond Plaintiffs' comprehension. Certainly they have been alleged. *E.g., id.* ¶ 43 ("Parker's Continuing Education Department, which housed the university's continuing-education platform, clothed Down with actual and/or apparent authority, authorizing and even requiring him to promote the continuing-education seminars at which he delivered his predatory sales pitches to chiropractors."); *id.* ¶ 122 ("Parker and Down, as co-sponsors, acted concertedly, authorized each other's acts and omissions, and clothed one another with actual and apparent authority.").

23
24

Thus, Down's representations at and on behalf of the Parker seminars constitute Parker representations.

25
26
27

As to Parker's unsupported contentions that Plaintiffs knew the truth about Down, that they did not rely on any of the misrepresentations, and that the misrepresentations

28

**Plaintiff's Response to Defendant's Rule 12(b)(6) Motion to Dismiss – Page 8    No. 20-CV-03194-RS**

therefore were not material, each is flatly contradicted by the pleadings. Complaint ¶ 39 ("Parker University allied with Down, lending its name and reputation to the enterprise, as well as the platform it had created, the continuing-education seminars, causing the attendees to suspend the skepticism they might normally have had when shown an investment opportunity."); *id.* ¶ 40 ("By combining and conflating his title, role, and presentation with the substantive portions, Parker allowed Down to mislead attendees into believing that he and his presentation had been vetted, approved, and endorsed by Parker."); *id.* ¶ 47 ("Parker's imprimatur carried significant weight with attendees, including Plaintiffs, and influenced how receptive the intended audience would be to the advertising, the presenters and the material presented."); *id.* ¶ 48 ("These circumstances— and the university's role in creating them—enabled Down to catch attendees such as Plaintiffs off guard."); *id.* ¶ 55 ("Having Parker's speaker endorse Down's credibility and effectiveness further increased the attendees' trust in Down."); *id.* ¶¶ 71-73 ("Plaintiffs were not likely to—and did not—run across [the truth about Down and his scheme]. And it took considerable time for the information to proliferate and reach the spheres of information to which they had access or could discover."); *id.* ¶ 78 ("As Plaintiffs . . . listened to Down and his presentations, they suspended the skepticism they normally would have had when approached by a stranger pitching an investment opportunity because they relied on Parker's sponsorship of, and control over, the seminar.").

### 3. Parker's No-Violation-of-Regulations Argument Is Contradicted by Its Own Evidence

Oddly, Parker attaches redacted emails and other correspondence to its motion, contending (a) that this evidence is referenced by and therefore incorporated into the

1
2
3
4
5
pleadings (it is not). and (b) that it contradicts Plaintiffs' allegations (it does not). Plaintiffs object to the attempt to shoehorn evidence into a Rule 12(b)(6) proceeding. But alternatively, Plaintiffs would point out that, at least at this stage of the case, this evidence supports Plaintiffs' allegations; it does not undermine them.

6
7
8
9
10
To begin with, the communications are vouched for by a declaration from defense counsel, not by anyone at Parker who might have personal knowledge of those communications having actually taken place. Thus, they are unauthenticated, hearsay evidence, unreliable at best.

11
12
13
Next, the communications are not fairly put in play by Plaintiffs' allegations, which make no reference to the communications but only to the subject that the communications reference. *See* Complaint ¶ 46 (containing Plaintiffs' sole allegations on the subject).

14
15
16
17
18
19
20
And next, the submitted evidence mostly involves non-authoritative denials by some Parker representative of (1) statements made by a representative of the North Carolina State Board of Chiropractic Examiners and (2) the allegations of one or more of the seminar attendees. Denying those things, at most, creates a fact question. It does not provide a basis for dismissal under Rule 12(b)(6).

21
22
23
24
25
26
27
Moreover, Plaintiffs' allegation that Parker was sanctioned by the North Carolina Board (Complaint ¶ 46) is hardly contradicted by Parker's assertion that it was merely placed on probation. This Court can take judicial notice that asking Google, "Is probation a sanction?" returns a number of hits indicating the answer is yes, including the top hit. See https://courses.lumenlearning.com/atd-bmcc-criminaljustice/chapter/section-6-4-parole-probation-and-community-sanctions/ ("The most basic difference between probation and parole is that

28

probationers are sentenced to community sanctions rather than a prison sentence.").

Certainly Plaintiffs have successfully alleged a violation of board rules here.

As to the California rules in particular, they quite plainly undermine Parker's entire position.

First, unlike the rules in Parker's home state of Texas, which describe the role played by Parker as that of a "sponsor," 22 Tex. Admin. Code § 73.3, the applicable rules in California do not mention "sponsors" at all (let along "publishers"). Instead, they define Parker's role with regard to the co-sponsored seminars as that of a "provider":

> As used in this section, a provider is an individual is an individual, partnership, corporation, professional association, college or any other entity approved by the board to offer board approved continuing education courses to licensees to meet the annual continuing education requirements set forth in Section 361 of these regulations.

Cal. Code Regs. tit. 16, § 362  Thus, Parker was the "provider" of the California seminars.

And as § 362(d) further denotes, this means it was Parker's obligation to:

> (1)  Identify an individual responsible for overseeing all continuing education activities of the provider.
>
> (2)  Provide a course roster to the board, within 30 days, upon written request. Course rosters shall include the names of all licensees, license numbers, and e-mail addresses if available. Failure to submit the roster upon written request within thirty (30) days may result in the withdrawal or denial of previous course approval and withdrawal of provider status. Providers shall maintain the course roster for four (4) years from the date of completion of the course.
>
> (3)  Maintain course instructor curriculum vitae or resumes for four (4) years.
>
> (4)  Disclose to prospective participants the names of the individuals or organizations, if any, who have underwritten or subsidized the course. Providers may not advertise, market, or display materials or items for sale inside the room while the actual instruction is taking place. Nothing in this

section shall be interpreted to prohibit a provider from mentioning a specific product or service solely for educational purposes.

(5) Inform the board in writing immediately of any change to the date, time or location of the course.

(6) Provide a certificate of completion to licensees within 30 days following completion of the continuing education course. Providers shall retain records of course completion for four (4) years from the date of completion and provide records of completion to the Board within thirty (30) days, upon written request.

These are, not coincidentally, the tasks assigned to Parker by the Co-Sponsorship Agreement with Down. And while Plaintiffs have no gripe over Parker's performance of items 2, 3, 5, and 6, they have a substantial complaint concerning 1 and 4.

Under § 362(d)(1), Parker had to "[i]dentify an individual responsible for overseeing all continuing education activities of the provider." And although it no doubt identified someone in its Continuing Education Department as being that person, no one— identified or otherwise—took on that role. And thus, there was no oversight. Complaint ¶¶ 40-41, 51-52, 117-20.

Similarly, under § 362(d)(4), Parker had to prohibit advertising and marketing inside the room during the continuing education instruction. Plaintiffs have alleged that there was no clear demarcation between education and Down's investment pitch, which masqueraded as education on improving the "financial health" of Plaintiffs' practices. Complaint ¶¶ 40-43. And while Parker's motion inexplicably asserts that Plaintiffs "admit" Down's pitches did not occur during the educational portion of the seminar, that assertion is false as well as unsupported by the allegations cited. *See* Motion at 9 (citing ¶ 54 of the Complaint, which admits no such thing—only that Down's multi-touch pitches typically began in the

classroom during a catered lunch); *cf*. Complaint ¶ 77 (alleging that Parker allowed Down "to advertise himself on equal ground with the instructors and to make presentations from the classroom stage ***during*** Parker-sponsored continuing education seminars" (emphasis added)).

In sum, Plaintiffs allege that no one oversaw or took on responsibility for overseeing the seminars, Complaint ¶¶ 40-41, 51-52, 117-20, and that Parker failed to ensure that there was any distinction between educational material and sales pitch, *id*. ¶¶ 40-43. These allegations sufficiently plead that Parker violated the California Code of Regulations. More importantly, they sufficiently allege the existence of a duty, one owed by Parker—as "provider"—to seminar attendees such as Plaintiffs. And thus, the motion to dismiss Plaintiffs' negligence claim fails on this ground alone.

### 4.    Parker's Negligent Hiring/Entrustment Defense Is Misguided and Wholly Dependent on Previously Addressed Arguments

The previously described two-step undermines Parker's attempt to escape liability for retaining Down. Because the seminars it offered to Plaintiffs—as the statutory "provider"—constituted a concerted action or joint venture by estoppel, and because Down acted as the agent or apparent agent of the venture or concerted action, Parker does not get off the hook.

Regarding Parker's three short subsections, which throw additional arguments at the wall, none of them stick.

First, negligent entrustment does not require agency. It is enough that the Parker seminars were under Parker's right of control. *See* Restat 2d of Torts § 308 ("It is negligence to permit a third person to . . . engage in an activity which is under the control

of the actor, if the actor knows or should know that such person intends or is likely . . . to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."). Allowing Down to run a Parker seminar unsupervised, in light of the SEC's prior finding that he was "guilty of orchestrating a Ponzi scheme," Complaint ¶ 2, meets this standard.

Second, causation is adequately alleged here: "Foreseeably Down, whom the SEC had previously found guilty of orchestrating *a Ponzi scheme* (see https://www.sec.gov/litigation/admin/ia1715.txt), used the co-sponsored seminars to pitch securities to unsuspecting chiropractors, including Plaintiffs. The entity backing those securities . . . has since gone bankrupt as a result of what the bankruptcy trustee has called, predictably, *a Ponzi scheme*." *Id.* (emphasis added). Parker's suggestion that there is no "nexus" or "causal connection" between entrusting Down and the harm suffered is disingenuous.

Third, Plaintiffs have alleged that Down was entrusted with conducting the entire series of Parker seminars. *Id.* ¶ 25 (alleging that "Down controlled all aspects of the seminar except processing the applications"). Only by pretending they were not Parker seminars, and were not controlled by the contractual terms of Parker's relationship with Down, can Parker suggest it did not entrust Down with anything. That Parker had no "monopoly" on continuing education seminars is hardly the point. Parker undeniably had the power to prevent Down from participating in *Parker seminars*. And Plaintiffs have quite plainly alleged harm foreseeably resulting from Parker's failure to do precisely that. *See, e.g., id.* ¶ 28 ("Parker's name and reputation, along with the promotional materials it authorized

Down to utilize, attracted chiropractors to the seminars, caused them to choose these seminars instead of countless others that were available to them, and lent both the seminars and the university's co-sponsor—Down—an air of legitimacy and credibility when he solicited investments from them."); *id*. ¶ 39 ("Parker's careless failure to vet Down, while allowing him access to its name imbued Down's pitches with an air of legitimacy and lulled Plaintiffs into trusting Down due to his association with and sponsorship by the university. In other words, Parker University allied with Down, lending its name and reputation to the enterprise, as well as the platform it had created, the continuing-education seminars, causing the attendees to suspend the skepticism they might normally have had when shown an investment opportunity."); *id*. ¶¶ 47-48 ("Parker's imprimatur carried significant weight with attendees, including Plaintiffs, and influenced how receptive the intended audience would be to the advertising, the presenters and the material presented. These circumstances—and the university's role in creating them—enabled Down to catch attendees such as Plaintiffs off guard. This is precisely the kind of behavior that state-licensing-board rules are designed to prevent. And it is inconsistent with generally accepted practices in the industry.").

### 5. Parker's Three-Sentence-Concerted-Action Argument Likewise Depends on Its Previous Arguments

Parker next argues, without elaboration, (a) that Plaintiff's concerted-action theory is "conclusory and undeveloped" and (b) that it fails under § 876 of the Restatement (Second) of Torts because, as a matter of law, Parker has committed no tort.

The irony here is not lost on Plaintiffs, who respectfully submit that ***legal theories*** in pleadings are not faulty for being concise. Rather, Plaintiffs submit, "conclusory and

undeveloped" are more appropriate criticisms for three-sentence arguments in motions to dismiss.

In any case, as with the argument addressed in the previous section, Parker's argument here is necessarily dependent on its prior arguments. If those are incorrect, then Plaintiffs have stated a negligence claim against Parker. Because negligence plainly is a tort, Parker's we-committed-no-tort argument here would necessarily fail. Thus, Plaintiffs incorporate their previous arguments in asserting that Parker has indeed committed a tort and therefore is liable under § 876.

## B.   Deceptive Practices

Parker offers four reasons it cannot, as a matter of law, be liable under the CLRA for deceptive practices. Some of them are merely retreads of the no-duty/no-representation arguments addressed above. The others overstate the law.

### 1.   Parker's No-Deceptive-Practice Argument Again Takes Liberties with the Facts

By now it is a familiar refrain. Parker contends it did nothing but process applications for continuing education credit—on behalf of the "***Down seminars***," one might add. Were this summary judgment, and had they an affidavit swearing that this is true, perhaps the argument could prevail. But it cannot prevail here.

There are no allegations to support the Parker-did-nothing theory of the case. The allegations, in fact, state precisely the opposite. Parker and Down jointly "sponsored" (read: provided) the seminars. Complaint ¶ 1. They were "Parker seminars," not Down seminars. *Id*. ¶¶ 93, 98, 105, 106. They were housed within the university's continuing

education department. *Id.* ¶ 43. Parker took on the responsibilities set forth in 16 CA ADC § 362, described at length above. In sum, Parker did stuff.

Through actual and explicit contractual authorization, as well as apparent authority, joint venture by estoppel, or concerted action, Down acted and spoke at and on behalf of the Parker seminars. *Id.* ¶¶ 43, 122, 123. Parker, thus, has responsibility for Down's actions at and on behalf of the seminars.

The bulk of Parker's argument to the contrary is devoted to analysis of an out-of-state case, *In re Fifth Third Bank, Nat'l Ass'n*, 719 S.E.2d 171 (2011), applying another state's law (which is not applicable here). Even then, the decision upholds summary judgment (not dismissal), and only because the plaintiffs lacked evidence to support their allegations, and also because they could not identify which banking laws they alleged had been violated. *Id.* at 178 ("A significant problem inherent in Plaintiffs' argument is the fact that, while they repeatedly assert that Defendant violated 'the banking laws,' Plaintiffs have failed to identify any specific statutes or regulations that Defendant allegedly violated."); *id.* at 215 ("Plaintiffs have failed to produce any evidence of joint action between Defendant and the developers or that Defendant's involvement in the [alleged concerted actions] extended beyond the point of merely making loans to investors . . . ."). Thus, the case stands more for the import of putting actual evidence into the summary judgment record than it does for anything analogous here.

Similarly, the lone California case that Parker relies on for this argument, *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 658 (S.D. Cal. 2014), did not dismiss the plaintiffs' claims for deficient pleadings.

Instead, that court merely required a mor definite statement because of the plaintiffs' failure to allege that the defendants had "made, adopted, **or controlled**" any of the representations at issue. 299 F.R.D. at 657 (emphasis added).

That is not the situation here, where Plaintiffs have alleged—and the Co-Sponsorship Contract explicitly states—that Parker had the exclusive right to control Down's conduct, with regard to promotion and marketing activities and otherwise. Complaint ¶ 27 (alleging that "Parker maintained control over Down and the seminar's content through the Co-Sponsorship Agreement that reserved for Parker the exclusive right to control the way its name and influence were used"); *id.* (quoting the Co-Sponsorship Agreement's provision that" [a]ll advertising, marketing, public communications, and promotional materials must be approved by Parker and Co-sponsor must submit those materials to Parker in a timely manner"); *id.* ¶ 26 (alleging that "the 'Co-Sponsorship Agreement' gave Down responsibility for . . . marketing and promotions (which must have prior approval of Parker)"); *id.* ¶ 40 (alleging that "Parker had exclusive editorial control" over Down's marketing materials); *id.* ¶ 41 (alleging that Parker engaged "in no review of the promotional material Down created for the seminars despite having the contractual right to do so").

Because Parker had the right to control the Parker seminars, and especially Down's statements promoting and marketing them, it may be held liable for deceptive trade practices as alleged.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 2.      Parker's No-Pre-Suit-Notice Argument Does Not Require Dismissal with Prejudice

Parker's extreme position—that Plaintiffs' second cause of action must be dismissed with prejudice for failing to give Parker 30 days' notice before filing suit—is incorrect. *Morgan v. AT&T Wireless Servs., Inc*., 177 Cal. App. 4th 1235, 1261, 99 Cal Rptr. 3d 768, 789 (2009) ("A dismissal with prejudice of a damages claim filed without the requisite notice is not required to satisfy [the notice provision's purpose]. Instead, the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements."). While there is older authority for dismissal with prejudice, in this District, dismissals on this basis appear to be without prejudice and explicitly provide leave to amend. The reasoning provided in the lone exception that Plaintiffs can find is no longer followed by the court that initially provided it. *See Anderson v. SeaWorld Parks & Entm't, Inc.*, No. 15-cv-02172-JSW, 2016 U.S. Dist. LEXIS 100504, at *11-12 & n.4 (N.D. Cal. 2016) (dismissing but granting leave to amend, and noting but declining to follow its own previous analysis resulting in dismissal with prejudice); *see also In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 U.S. Dist. LEXIS 199411, at *11-12 (N.D. Cal. 2014) (addressing potential impact of equitable tolling and dismissing with leave to amend); *Hatfield v. Halifax PLC*, 564 F.3d 1177, (9th Cir. 2009) (applying equitable tolling in favor of plaintiff who had previously brought since-dismissed class action).

Thus, Plaintiffs respectfully suggest that dismissal with prejudice is inappropriate here. Any notice requirement can be addressed by an amended or supplemental pleading or abatement period, and Parker's authority to the contrary, it appears, is not followed in this District or any longer in California courts.

### 3. Parker's Non-Consumers Argument Focuses on the Wrong Transaction

Parker conveniently confuses the transactions at issue in this argument, asserting that the purpose of Plaintiffs' transactions with Parker were for a business purpose rather than for personal, family or household purposes, as the CLRA requires. But it is not really Plaintiffs' $35.00 continuing education fee that is the basis of this suit. Rather, the impetus, obviously, is their personal investments (largely retirement investments) in the securities that Down was peddling. And these investments were not for business purposes. *Cf. Thorns v. Sundance Props.*, 726 F.2d 1417, 1419 (9th Cir. 1984) 1418-19 (reversing summary judgment because determining whether a transaction is for business or personal/family/household purposes "'requires a case by case analysis," and holding that the "[p]urchase of a limited partnership interest for investment purposes . . . can be for a personal as opposed to a business or commercial purpose").

And while Plaintiffs do appear to rely, in their second count, on the $35.00 charge to attend the seminar, Complaint ¶ 128, they do so only after incorporating the prior allegations regarding their personal investments, *id*. ¶ 126. Thus, Parker cannot deny receiving plausible notice of the basis of this claim.

### 4. Parker's Publisher-Exemption Defense Is Not Established by the Pleadings

As explained above, Parker provides no explanation—none—why it believes it can be treated as a "publisher" or how the protections of the First Amendment apply to its conduct here. Plaintiffs have not alleged that Parker is a publisher. The term "sponsor"

neither denotes nor connotes publisher. This Court has not been asked to take judicial notice that Parker is a publisher, and there would be no basis for doing so if it had been.

Likewise, Parker provides no explanation for why the defense provided by § 1755 of the California Civil Code should apply. Instead, it merely asserts that "Plaintiffs *clearly* seek to hold Parker liable as the publisher of Down's advertisements." Motion at 16 (emphasis added).

Plaintiffs respectfully submit that the reason Parker provides no explanation is that, to do so, it would have to assert facts outside the pleadings. This is because the defense in § 1755, by its own terms, applies only to "advertising medium" owners and their employees. Plaintiffs have not pleaded themselves out of court by alleging that Parker owns an advertising medium. And if the defense is applicable (which Plaintiffs highly doubts), Parker will have to prove it after discovery. *See* 44 California Forms of Pleading and Practice—Annotated § 504.13(5) (referring to § 1755 as an affirmative defense).

## C.    Unfair Competition

Parker's final arguments are merely recitals of its earlier statements. Again, it asserts, it cannot be liable—this time under the UCL—because it did nothing but provide services to Down. Again, the "Down seminars" argument. Again, the representations were solely Down's and outside of Parker's control.

Plaintiffs respond by saying, no, these were "Parker seminars." And Plaintiffs incorporate here their previous arguments regarding Parker's authorization of Down, its concerted action with Down, its joint venture by estoppel, and apparent authority.

Plaintiffs also incorporate and re-urge here their arguments regarding Cal. Code Regs. tit. 16, § 362(d)(1) and (d)(4). Parker failed in its oversight duties and its duties to prohibit advertising and marketing inside the room during the continuing education instruction.

And Plaintiffs deny Parker's suggestion that they are seeking to make it a "global policeman." They merely want it to oversee the Parker seminars as is required by the Cal. Code Regs. and explained at length above.

This is not a case about the contents of Cap'n Crunch Berries or Fruit Loops, a comparison that Parker apparently wants this Court to make. This case is about a university leading doctors of chiropractic to believe that it was supervising seminars—seminars that it had a regulatory duty to supervise—when in reality it had sent an unsupervised Ponzi schemer to sell them on his latest Ponzi scheme.

Parker will have an opportunity to present evidence that Plaintiffs are to blame, that they were foolish to believe the scheme, that their expectations regarding Parker's supervision were unwarranted. No such evidence is before this Court at this stage, however, and Plaintiffs deny that any of their allegations support such notions.

## V. CONCLUSION

For all these reasons, Plaintiffs respectfully submit that Parker's motion under Rule 12(b)(6) should be denied.

1

DATED:  December 29, 2020

Respectfully submitted,

2

**SBAITI & COMPANY PLLC**

3

*/s/ Mazin A. Sbaiti*

**Mazin A. Sbaiti**

4

California Bar No. 275089

mas@sbaitilaw.com

5

**Brad J. Robinson**

6

Texas Bar No. 24058076

bjr@sbaitilaw.com

7

JPMorgan Chase Tower

2200 Ross Avenue – Suite 4900W

8

Dallas, TX  75201

T:  (214) 432-2899

9

F:  (214) 853-4367

10

ATTORNEYS FOR PLAINTIFFS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28